## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Raymond Parker and Kyren Pinks,      Civil File No. 06-4821 (RHK/AJB)
individually and on behalf of
others similarly situated,

      Plaintiffs,

v.

Rowland Express, Inc.,
its health and welfare benefit plans
and/or plan administrators, John Does 1-6,
and James Rowland,

      Defendants.

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES

## <u>INTRODUCTION</u>

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiffs Raymond Parker and Kyren Pinks bring this motion to compel Defendants to: (1) identify all drivers/couriers whom Defendants classified as "independent contractors" during the applicable statutory period, their supervisors, and Plaintiffs' coworkers; (2) answer and respond to discovery requests pertaining to Plaintiff Kyren Pinks; (3) fully disclose Defendant's current and past local contractor agreements with DHL and similar documents and agreements; and (4) identify judicial or other administrative proceedings or investigations relating to Defendants' employment practices, wages, hours, or manner of compensating driver/couriers. This information is directly relevant to Plaintiffs'

burden in proving the merits of their case, as well as certifying this case as a class action under Rule 23(a) and (b).   Although the information is readily obtainable, and Defendants' objections are wholly without merit, Defendants have repeatedly refused to produce it.   Plaintiffs' motion should be granted in full.

## RELEVANT FACTS

Rowland Express, Inc. ("Rowland Express") is a Wisconsin corporation.   (Dkt. #1.)   Rowland Express is headed by James Rowland, the company's President and sole owner.   (Rowland Dep. at 18, 28.)[1]   Rowland Express is headquartered out of Mr. Rowland's personal residence in Elkhorn, Wisconsin.   (Id. at 59.)

Rowland Express was formed in April of 1999.   (Rowland Dep. at 12.)   At that time, the company operated as a franchisee of Straight Shot Express, providing on demand delivery services in the Milwaukee, Wisconsin area.   (Id. at 12, 17.)   In July or August of 2001, Rowland Express began servicing local pickup and delivery contracts for Airborne Express.   (Id. at 12-14.)   Later in 2001, the company secured an Airborne Express contract in Duluth, Minnesota.   (Id. at 13.)   Rowland Express took over part of an Airborne Express contract in Des Moines, Iowa in early 2003.   (Id. at 13-14.)

Around September 2003, Airborne Express was acquired by DHL Worldwide Express, Inc. ("DHL Express").   (Id. at 16.)   At present, Rowland Express has five operational contracts with DHL Express and maintains facilities in five locations

---

[1]    The deposition of Rowland Express, Inc.'s corporate representative, James Christian Rowland, was taken on April 13, 2007 pursuant to Fed. R. Civ. P. 30(b)(6).  A true and correct copy of Mr. Rowland's deposition transcript is attached to the Affidavit of Steven Andrew Smith as Exhibit 1.  All other exhibits and unpublished opinions are also attached to the Affidavit of Steven Andrew Smith.

throughout the Midwest: (1) Milwaukee, Wisconsin; (2) Duluth, Minnesota; (3) Plymouth, Minnesota; (4) Des Moines, Iowa; and (5) Rockford, Illinois.  (<u>Id.</u> 18-19.)

Each of Rowland Express's five facilities operates in substantially the same manner.  (<u>See id.</u> at 22.)  Each of the five Rowland Express facilities generally uses four types of drivers: (1) lead drivers; (2) part-time drivers; (3) full-time drivers; and (4) independent contractor drivers.  The core job duties of each of these types of drivers is the same—picking up and delivering packages.  (<u>Id.</u> at 125-26.)

"Independent contractor" drivers perform both pickup and delivery services.  (<u>Id.</u> at 45-46.)  Independent contractor drivers are assigned a specific "territory," and are responsible for maintaining their own delivery vehicles, complying with applicable laws, and managing other drivers.  (<u>Id.</u> at 46-47, 68-69.)  Aside from these small differences, the job duties of the "employee" drivers and "independent contractor" drivers are the same.  (<u>Id.</u> at 47.)  At present, Rowland Express utilizes between sixty (60) and seventy (70) independent contractor drivers.  (Ex. 2 at 5.)

Prior to 2003, all Rowland Express drivers were classified as "employees" of Rowland Express, Inc.  In 2003, however, Rowland Express began having financial difficulties as the result of frequent accidents, rising insurance rates, and high driver turnover.  (Rowland Dep. at 42.)  Mr. Rowland needed a plan to control his company's costs.  (<u>Id.</u> at 42.)

Rowland Express began classifying full time drivers as independent contractors in around October of 2003.  (<u>Id.</u> at 39-40.)

The prerequisites for being hired as an independent contractor driver with Rowland Express are minimal: a clean driving record and a background check. (Id. at 81; see Ex. 3.) Previous courier experience is not a requirement. (Rowland Dep. at 82.) When an independent contractor is hired, Mr. Rowland hopes that they will work for Rowland Express on a permanent basis. (Id. at 84.)

At the time of hire, every Rowland Express independent contractor signs an identical Contractor Operation Agreement. (Id. at 86.) The Operation Agreement describes the job duties of all independent contractor drivers:

> Contractor shall, as an independent contractor, provide pickup transport, and delivery of shipments (including materials defined as hazardous materials under Regulations of the U.S. Department of Transportation) between shippers and receivers, Rowland facilities, designated carriers, terminals and/or airport(s), subject to rates approved by Rowland.

(Id. at 88; Ex. 4.)

All Rowland Express independent contractor drivers share the same job title, and all are required to wear similar uniforms and drive similar vehicles. (Rowland Dep. at 131-32, 134.) All Rowland Express independent contractor drivers are subject to the same method of compensation wherein they are paid on a daily basis. (Id. at 133.) Rowland Express does not keep track of the number of hours worked by any of its independent contractor drivers, and none of them are paid for overtime hours worked. (Id. at 129, 132.)

Rowland Express has the same job requirements for its independent contractor drivers in each of the company's five locations. (Id. at 132.) The vast majority of these

requirements are set out in various "Cartage Agreements" between Rowland Express and DHL Express.

Rowland Express is required to enter into an identical "Cartage Agreement" with DHL Express for each of its five facilities.  (Id. at 59.)  These detailed agreements set out the requirements with which Rowland Express must comply in order to do business with DHL Express, including specific requirements relating to Rowland Express's drivers. (Id. at 33, 93.)

## **Plaintiffs**

Plaintiff Raymond Parker ("Parker") worked as an independent contractor driver for Rowland Express, Inc. in Plymouth, Minnesota.  (Dkt. #1.)  On December 8, 2006, Parker filed a Rule 23 class action and FLSA collective action complaint in the United States District Court for the District of Minnesota on behalf of himself and all other similarly situated individuals.   (Dkt. #1.)   Parker alleged that Rowland Express improperly classified him and many other Rowland Express delivery drivers as "independent contractors," thereby depriving them of substantial benefits they would have received as "employees" under state and federal law.  (Dkt. #1.)  Parker brought claims under: (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; (2) the Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.; (3) the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. § 177.21 et seq.; (4) Minn. Stat. § 181.79; and (5) for unjust enrichment.

Plaintiff Kyren Pinks ("Pinks") worked as an independent contractor driver for Rowland Express in Des Moines, Iowa.  (Dkt. #21.)  On April 24, 2007, Raymond Parker

filed an amended Rule 23 class action and FLSA collective action complaint adding Pinks as a named-plaintiff to the claims under the FLSA and ERISA.  (Dkt. #21.)  Pinks also brought Rule 23 class claims on behalf of himself and all other similarly situated individuals under: (1) the Iowa Wage Payment Collection Law ("IWPCL"), Iowa Code § 91A.1 et seq.; and (2) for unjust enrichment.  (Dkt. #21.)

Although the Court denied Plaintiffs' Motion for Conditional Collective Action Certification with respect to the nationwide FLSA claims on June 25, 2007, Plaintiffs' individual FLSA claims and all other Rule 23 class claims remain at issue in this case. (Dkt. #46.)  Plaintiffs continue to allege that they and other "independent contractor" drivers/couriers suffered lost wages and lost benefits as a result of Defendants' practice of classifying drivers/couriers as "independent contractors," rather than employees.  (See Second Amd. Compl.)

## Discovery Disputes

On February 22, 2007, Plaintiffs served the first set of interrogatories and document requests on Defendants seeking, among other things, information relating to the named Plaintiffs, DHL local contractor and other similar agreements, past investigations and proceedings including those involving wage and hour complaints, and the identities of Plaintiffs' coworkers and their supervisors.  (Ex. 5.)  On April 3, 2007, Defendants served responses and answers to Plaintiffs' first set of requests for production and interrogatories.  (Ex. 6)  None of Defendants' responses or answers addressed Plaintiffs' discovery requests regarding identification of other drivers/couriers classified as "independent contractors," their supervisors, or Plaintiffs' coworkers.  (Id.)  None of

Defendants' responses or answers addressed Plaintiffs' discovery requests regarding investigations and proceedings pertaining to Defendants' employment practices, including wage and hour complaints.  (See id.)  While Defendants amended their answers to Plaintiffs' first set of interrogatories on April 13, 2007, and responded to and answered Plaintiffs' second set of requests for production and interrogatories, neither of these communications addressed Plaintiffs' initial requests for identification key fact witnesses and putative class members.  (Exs. 2, 7, 8.)  Although Defendants indicated during the April 13, 2007 Federal Rule of Civil Procedure 30(b)(6) Deposition of James Rowland that much of the information Plaintiffs seek is readily available in list format, no such information has been disclosed.  (Rowland Dep. 66:1-9.)  Moreover, despite the fact that the Court entered a Protective Order on April 4, 2007, Defendants disclosed only DHL local contractor agreements with redacted rate information on the grounds that such information was confidential.  (Ex. 8, Dkt. #14.)  Further, since the addition of Kyren Pinks as a named Plaintiff in the case, Defendants have not supplemented their responses or answers to address Plaintiffs' discovery requests regarding Kyren Pinks.  The interrogatories and requests at issue here, along with Defendants' responses and objections, are outlined below.

**Defendants' General Objections:**  Defendant objects to Plaintiff's definition of "Plaintiff" as "Raymond Parker and any other persons who join the above-entitled litigation as plaintiffs by written consent or otherwise."  Unless and until the Court in this matter conditionally certifies a "collective," the only appropriate plaintiff is Raymond Parker and any other persons who are actually named in the caption as a plaintiff, and Defendant is not required to produce confidential information concerning drivers other than Parker.  Defendant objects to Plaintiff's definition of "applicable statutory period" as the period beginning 6 years prior to the filing of Plaintiff's Complaint.  The longest

statute of limitations for the claims asserted by Plaintiff is 3 years.
Accordingly, Plaintiff's requests for records relating to time periods prior to
December 8, 2003 are not reasonably calculated to lead to the discovery of
admissible evidence.

**Interrogatory No. 2:**  Identify all persons who you know or believe have any
information with respect to any facts or matters relating to the allegations in
Plaintiff's Complaint or Defendant's Answer and, for each person identified,
state what information you know or believe each person may possess.

**Answer:**   Defendant objects to this interrogatory on the grounds that it is
vague and ambiguous, overbroad, unduly burdensome, and seeks information
that may be subject to the attorney-client and/or work product privileges.
Without waiving these objections, Defendant answers that James Rowland has
information concerning the nature of Rowland Express's business and its
relationship with drivers.    In addition, all drivers who performed
delivery/pickup work for Mr. Parker (and whose identity is known only to Mr.
Parker) have information concerning the work they did and their relationship
with Mr. Parker.

**Interrogatory No. 4:**   With regard to Plaintiff, state: (a) Plaintiff's date of
original hire; (b) all compensation paid to Plaintiff for all months Plaintiff
worked for Defendant; (c) all deductions, direct or indirect, taken from
Plaintiff's compensation for all months Plaintiff worked for Defendant; (d) all
job-related fees or expenses Plaintiff was required to pay for all months
Plaintiff worked for Defendant; and (e) all benefits of any kind received by
Plaintiff for all months Plaintiff worked for Defendant and the value of those
benefits.

**Answer:**
a) Raymond Parker first started working for Rowland Express on July 2,
   2001;
b) <u>See</u> the available "settlement sheets" (Bates Nos. ROW0001-76), "payroll
   printouts" (Bates Nos. ROW00077-165), and documents provided by
   Contractor Management Services (CMS) (Bates Nos. ROW0166-185) for
   Raymond Parker, copies of which are attached.  The dates for the payroll
   printouts are written at the top of each page, e.g., GVMHOURS040303.
   The last six numbers represent the day, month and year of the last date in
   the settlement period and GVM represents the Golden Valley station.
c) <u>See</u> answer to Interrogatory (4)(b), <u>supra</u>.
d) <u>See</u> answer to Interrogatory (4)(b), <u>supra</u>.
e) Defendant objects to this interrogatory on the grounds that it is vague and
   ambiguous as to what is meant by "value" and "benefits."  Without waiving

these objections, during the time that Plaintiff worked as an employee, he accrued vacation benefits pursuant to the following schedule:  1 week for the first year, and then 2 weeks for each year after that.  Defendant answers that it has never made an attempt to place a "value" on these benefits. Defendant has not offered health benefits to employees for several years. Even when it did offer such benefits, based upon Defendant's records (Bates Nos. ROW 0244-247), Raymond Parker declined benefits.

**Interrogatory No. 8:**  Identify each independent contractor/driver who worked for Defendant during the applicable statutory period.

**Answer:**  See Defendant's General Objections, supra.  Plaintiff's requests for records relating to time periods prior to December 8, 2003 are not reasonably calculated to lead to the discovery of admissible evidence.  Defendant also objects to this interrogatory on grounds that it calls for confidential information that Defendant is not required to produce unless and until the Court in this matter conditionally certifies a "collective" class in this matter.

**Interrogatory No. 9:**  Identify all persons who supervised Plaintiff in any way during the time period in which Plaintiff worked for Defendant.

**Answer:**  During the time that Raymond Parker worked as an employee, David Francis, Rudy Aguirre, and James Rowland.

**Interrogatory No. 10:**   Identify all persons who worked at the same location(s) as Plaintiff during the time period in which Plaintiff worked for Defendant.

**Answer:**  See Defendant's objection and answer to Interrogatory No. 8, supra.

**Interrogatory No. 13:**  State in detail, and not in summary fashion, all requirements of Defendant and/or DHL with which Defendant's independent contractor driver/couriers have to comply.

**Answer:**  Defendant did not impose any specific requirements beyond those set forth in the "Contractor Operation Agreement" into which it entered with Raymond Parker (Bates Nos. ROW0186-195).   However, pursuant to Defendant's "Cartage Agreement" with DHL (Bates Nos. ROW0196-230)(which is produced subject to the protective order to which the parties have stipulated), drivers were required to comply with the "Trademark Guidelines" set forth therein.  Defendant refers Plaintiff to these contracts.

**Interrogatory No. 20:**  Identify all judicial or other administrative proceeding, investigations, or inquiries of any kind of Defendant, including but not limited to, any investigation conducted by any state or federal wage and hour department relating to wages, hours or the manner of compensating its drivers/couriers during the last five years.

**Answer:**  Defendant objects to this interrogatory on the ground that it seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence at trial, and on grounds that it is overbroad as to scope and time and seeks confidential information.

**Interrogatory No. 21:**  Identify all exhibits that may be introduced at trial or used as exhibits in depositions in this litigation.

**Answer:**  Defendant objects to this interrogatory on the grounds that it seeks information that may be protected by the attorney client privilege and/or work product doctrine.  Without waiving its objection, Defendant answers that it may introduce all of the documents attached to Defendant's answers to interrogatories and responses to requests for production.  Discovery is continuing.

**Interrogatory No. 22:**  Identify any and all witnesses who may be called at trial in this litigation.

**Answer:**  Defendant objects to this interrogatory on the grounds that it seeks information that may be protected by the attorney client privilege and/or work product doctrine.  Without waiving its objection, Defendant answers that it may call James Christopher Rowland and Raymond Parker as witnesses at any trial in this matter.  Discovery is continuing.

**Request No. 1:**  All documents relating to any allegation contained in Plaintiff's Complaint or any allegation or defense, affirmative or otherwise, contained in Defendant's Answer.

**Response:**  Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous, is not reasonably calculated to lead to the discovery of evidence admissible at trial, and seeks information that may be protected by the attorney client privilege and/or work product doctrine.  Without waiving its objections, Defendant refers Plaintiff to the documents attached to its answers to Plaintiff's Interrogatories (Set I).

**Request No. 2:**  All documents relating to, or identified in response to, any of Plaintiff's Interrogatories to Defendant.

**Response:**   See documents attached to Defendant's Answers to Plaintiff's Interrogatories (Set I)(Bates Nos. ROW 0001-238).

**Request No. 3:**   Plaintiff's personnel file and all other similar or related documents.

**Response:**   Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous, and not reasonably calculated to lead to the discovery of evidence admissible at trial.   Without waiving its objections, Defendant has attached the "personnel file" for Raymond Parker during the time he was an employee of Defendant.  (Bates Nos. ROW 0239-247).

**Request No. 4:**   All contracts or agreement including, but not limited to, Defendant's independent contractor driver/courier agreement between Defendant and Plaintiff.

**Response:**   Defendant refers Plaintiff to the contract attached to Defendant's Answers to Plaintiff's Interrogatories (Set I) (Bates Nos. ROW0186-195).

**Request No. 5:**   All records, in electronic and importable format, of any compensation paid to Plaintiff during the applicable statutory period, by week and pay period.

**Response:**   Defendant re-asserts its General Objections.  Without waiving its objections, Defendant refers Plaintiff to the documents Defendant produced in answer to Plaintiff's Interrogatories (Set I), Interrogatory No. 4 (Bates Nos. ROW0001-0185).   In addition, NICA was Defendant's third-party administrator prior to CMS and NICA may have information from earlier time periods.

**Request No. 6:**  All records, in electronic or importable format, of any benefits including but not limited to, health and welfare benefits, vacation pay, workers' compensation, unemployment benefits, and income tax withholding received by Plaintiff during the applicable statutory period, by week and pay period.

**Response:**   Defendant re-asserts its General Objections.   Defendant also objects to the term "benefits" as vague and ambiguous and calling for a legal conclusion.   Without waiving its objections, Defendant refers Plaintiff to its Answers to Plaintiff's Interrogatories (Set I), Interrogatory No. 4, and the documents referred to in those Answers.

**Request No. 7:**  All records, in electronic and importable format, of any deductions taken from Plaintiff's compensation during the applicable statutory period, by week and pay period.

**Response:**  Defendant re-asserts its General Objections.  Without waiving its objections, Defendant refers Plaintiff to its Answers to Plaintiff's Interrogatories (Set I), Interrogatory No. 4, and the documents referred to in those answers.

**Request No. 8:**  All records, in electronic and importable format, of any job-related fees or expenses paid by Plaintiff during the applicable statutory period, by week and pay period.

**Response:**  Defendant re-asserts its General Objections.  Without waiving its objections, Defendant answers that its independent contractors are responsible for paying all expenses associated with their work.  Defendant refers Plaintiff to its answer to Plaintiff's Interrogatory Nos. 14 and 15 and the documents produced by Defendant in its answer to Interrogatory No. 4.

**Request No. 9:**  All documents relating to any vehicles purchased or leased by Plaintiff from Defendant or anyone other than Defendant during the applicable statutory period.

**Response:**  Defendant re-asserts its general objections.  Without waiving its objections, Defendant attaches the two "payment schedules" agreed upon by Plaintiff and Defendant with regard to two vans Plaintiff purchased from Defendant (ROW0248-249).  Defendant has no knowledge as to whether Plaintiff ever purchased or leased vans from anyone else.

**Request No. 10:**  All timesheets or other similar or related documents identifying or describing the hours worked by Plaintiff during the applicable statutory period.

**Response:**  Defendant re-asserts its General Objections.  Defendant also objects to this request on the grounds that it is overbroad and vague and ambiguous.  Without waiving its objections, Defendant responds that it has no "timesheets."  However, Defendant refers Plaintiff to the documents produced in answer to Plaintiff's Interrogatories (Set I).

**Request No. 11:**  All work schedules or other similar related documents identifying or describing the anticipated hours worked by Plaintiff during the applicable statutory period.

**Response:**   Defendant re-asserts its General Objections.   Defendant also objects to this request on the grounds that it is overbroad and vague and ambiguous as to what is meant by "anticipated."   Without waiving its objections, Defendant refers Plaintiff to the documents produced in answer to Plaintiff's Interrogatories (Set I).

**Request No. 12:**   A list, in electronic and importable format, of all of Defendant's independent contractor driver/couriers at all of Defendant's locations within the applicable statutory period, including the names, address, telephone number, dates worked, work location, employee number, and last four digits of the social security number of each driver/courier.

**Response:**   Defendant re-asserts its General Objections.   Defendant also objects to this request on the grounds that it is overbroad and calls for confidential information that Defendant is not required to produce unless and until the Court in this matter conditionally certifies a "collective" class in this matter.

**Request No. 13:**   A list, in electronic and importable format, of all persons who worked for Defendant at the location(s) in which Plaintiff worked within the applicable statutory period, including the name, address, telephone number, job title, dates of employment, location of employment, and current employment status of each person.

**Response:**   Defendant re-asserts its General Objections.   Defendant also objects to this request on the grounds that it is overbroad and calls for confidential information that Defendant is not required to produce unless and until the Court in this matter conditionally certifies a "collective" class in this matter.

**Request No. 14:**   A list, in electronic and importable format, of all persons who worked for Defendant at the location(s) in which Plaintiff worked within the applicable statutory period who in any way supervised Plaintiff, including the name, address, telephone number, job title, dates of employment, location of employment, and current employment status of each person.

**Response:**   Defendant re-asserts its General Objections.   Without waiving its objections, Defendant answers that David Fancis, Rudy Aguirre, and James Rowland supervised Plaintiff at one time or another during the time Plaintiff worked as an employee of Defendant.

**Request No. 15:**   A list, in electronic and importable format, of all persons who worked for Defendant at all of Defendant's locations within the applicable

statutory period who are or were responsible for supervising Defendant's driver/couriers, including the name, address, telephone number, job title, dates of employment, location managed, and current employment status of each person.

**Response:**   Defendant re-asserts its General Objections.   Defendant also objects to this request on the grounds that it is overbroad and calls for confidential information that Defendant is not required to produce unless and until the Court in this matter conditionally certifies a "collective" class in this matter.

**Request No. 19:**   All documents identifying or describing, in any way, Defendant's policies, procedures, or methods of appraising, evaluating, or disciplining its driver/couriers: (a) during the time period when they were classified as "independent contractors"; and (b) during the time period when they were classified as "employees."

**Response:**   Defendant asserts the same objection as in response to Request No. 16.   In addition, Defendant objects to this request on the grounds that it is vague and ambiguous.   Without waiving these objections, Defendant refers Plaintiff to the contract between Plaintiff and Defendant.

**Request No. 21:**   All documents identifying or describing, in any way, Defendant's policies, procedures, or methods for compensating its driver/couriers: (a) during the time period when they were classified as "independent contractors"; and (b) during the time period when they were classified as "employees."

**Response:**   Defendant refers to and incorporates its response to Request No. 16.   Without waiving its objections, Defendant refers Plaintiff to the contract entered into between Plaintiff and Defendant for Plaintiff's compensation.

**Request No. 22:**   All documents identifying or describing, in any way, Defendant's policies, procedures, or methods for compensating anyone who works for Defendant and has job duties similar to Defendant's driver/couriers, such as "lead drivers" or other similar or related positions.

**Response:**   Defendant refers to and incorporates its response to Request No. 16.   Without waiving its objections, Defendant refers Plaintiff to the contract entered into between Plaintiff and Defendant for Plaintiff's compensation.

**Request No. 38:**   Defendant's current and past local contractor agreement(s) with DHL and any other similar or related documents or agreements.

**Response:**   Defendant objects to this request on the grounds that it seeks information that is confidential and proprietary.   Subject to the terms of the protective order to which Plaintiff has stipulated, Defendant's Cartage Agreement (including schedules) with DHL is attached to Defendant's answers to Plaintiff's Interrogatories (Set I) (ROW0196-230).   However, information relating to rates agreed upon between DHL and Defendant have been redacted because they constitute confidential, proprietary information that is not calculated to lead to the discovery of information admissible at trial.

**Request No. 40:**   All documents relating to any requirements or guidelines followed by Defendant's driver/courier in the performance of their job duties.

**Response:**   Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous, and not reasonably calculated to lead to the discovery of evidence admissible at trial.   Without waiving its objections, Defendant refers Plaintiff to Plaintiff's independent contractor agreement with Defendant for a description of Plaintiff's contractual obligations to Defendant.

**Request No. 43:**   Defendant's current and past independent contractor driver/courier agreement(s) and any other similar or related documents or agreements.

**Response:**   Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous, and is not reasonably calculated to lead to the discovery of evidence admissible at trial.   Without waiving its objections, Defendant refers Plaintiff to Plaintiff's contract with Defendant.

(Exs. 2, 6, 8.)

### Attempts to Meet and Confer

On September 11, 2007, Plaintiffs' counsel wrote a letter to Defendants' counsel regarding various deficiencies in Defendants' discovery responses, including those listed above.  (Ex. 9.)  Defendants have refused to respond in any manner to Plaintiffs' good faith attempts to meet and confer regarding the discovery deficiencies.  (Affidavit of Steven Andrew Smith ¶ 4.)  Plaintiffs now bring this motion pursuant to Rule 37(a)(2)(B)

of the Federal Rules of Civil Procedure requesting an order compelling Defendants to fully respond.

## ARGUMENT

The Federal Rules of Civil Procedure establish a liberal system of discovery "meant to insure that no relevant fact remain[s] hidden." Crawford v. Dominic, 469 F. Supp. 260, 262 (E.D. Pa. 1979). Rule 26(b)(1) states that "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1). When a party fails to answer an interrogatory or respond to a request for production, "the discovering party may move for an order compelling an answer." Fed. R. Civ. P. 37(a)(2)(B).

The threshold issue in such a discovery dispute is whether the requested discovery meets the requirements of Federal Rule of Civil Procedure 26 regarding relevance. To be relevant, information sought need not be admissible at trial; it need merely appear to be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Thus, relevance is broadly construed to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Cole v. Youth Villages, Inc., No. 04-2755 B, slip op., 2006 WL 1699459, at *1 (W.D. Tenn. June 15, 2006), quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Further, where the information sought appears relevant,

> [t]he party resisting discovery bears the burden of establishing lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed .R. Civ. P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

Monsanto Co. v. Ralph, No. 01-MC-1004, slip op., 2001 WL 35957201, at *2 (W.D. Tenn. May 10, 2001) (internal citations omitted).

Plaintiffs' discovery requests are relevant in this case.  They are reasonably calculated to lead to the discovery of admissible evidence, and Defendants' objections are insufficient and without merit.  For these reasons, Plaintiffs' Motion should be granted.

## I.   DEFENDANTS SHOULD BE COMPELLED TO PRODUCE THE IDENTITIES AND CONTACT INFORMATION OF ITS INDEPENDENT CONTRACTORS, SUPERVISORS, AND PLAINTIFFS' COWORKERS.

Plaintiffs' requests for the identities and contact information of Defendant's independent contractors, supervisors, and Plaintiffs' coworkers are relevant for the purposes of discovery in two respects.  First, they seek the identity and location of key fact witnesses to Defendants' business and employment practices, classification systems, knowledge, and conduct.  Second, this information is critical to the evaluation of whether class certification is appropriate.  Because the information sought is relevant to this litigation, an order compelling Defendants to produce the requested information is appropriate.

**A.      The Identities of Defendants' Independent Contractors and Supervisors and Plaintiffs' Coworkers Are Relevant To the Determination of the Merits of This Case.**

Interrogatories 8 and 10 and Requests for Production 12, 13, and 15 are relevant to developing the merits of this case, and are clearly calculated to lead the discovery of admissible evidence.  Rule 26(b)(1) specifically states that "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including . . . the *identity and location* of persons having knowledge of any discoverable matter."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  This is precisely the information Plaintiffs requested.

The identity and contact information of Plaintiffs' coworkers and supervisors is relevant to the claims and defenses of the parties, because many of these individuals were eyewitnesses to key facts in dispute: whether Plaintiffs worked overtime, whether and to what extent Defendants exercised control over Plaintiffs' work, what the job responsibilities entailed, and whether Defendants denied Plaintiffs benefits and pay to which they were entitled.   For example, Defendants' driver/courier independent contractors, their supervisors, and Plaintiffs' coworkers are likely to possess and be able to testify to the following information:

- whether Plaintiffs worked more, or less or the same amount of hours as their coworkers;
- whether Defendants provided employment benefits to employees and denied them for those classified as independent contractors;
- Defendants' methods of compensation;
- whether Defendants provided training for driver/couriers; and
- whether, and to what extent Defendants' control, direction, and supervision over the work differed for employees and independent contractors.

Additionally, these individuals may have information relevant to the issue of whether Defendants' violations of the FLSA and state laws were willful[2] or whether liquidated damages are appropriate.[3]  These issues depend upon Defendants' knowledge and conduct: factual material that its independent contractors and employees (both supervisory and non-supervisory) are likely to possess.  Interviews with these individuals are likely to lead to the discovery of evidence that Defendants knew they were denying their independent contractors overtime pay and other benefits, and that their conduct was deliberate.

**B.**     **The Identities of Defendants' Independent Contractors and Supervisors and Plaintiffs' Coworkers Are Relevant to the Determination of the Appropriateness of Rule 23 Class Certification.**

Plaintiffs are also entitled to know the identity of members of the putative class in order to conduct adequate discovery for purposes of class certification.  To obtain class certification, Plaintiffs must establish that: (1) the class is so numerous that joinder of all

---

[2]  FLSA plaintiffs typically can only collect damages within a two-year statute of limitations.  29 U.S.C. § 255(a).  Plaintiffs may collect damages incurred within a third year, however, if the jury determines that Defendant's violation of the overtime laws was "willful."  Id.  A violation of the FLSA is "willful" when the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

[3]  An employer who violates the FLSA's overtime provisions is liable to the employee in the amount of the unpaid overtime compensation "and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b); see Martin v. Indiana Michigan Power Co., 381 F.3d 574, 584 (6th Cir. 2004) (noting that liquidated damages are the norm and have even been referred to as "mandatory").  Only if the employer satisfies the substantial burden of demonstrating both good faith and reasonable grounds for the misclassification may a court then exercise its discretion to limit or deny liquidated damages.  Id.

members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In addition, the Court must find that one of the following conditions is satisfied: (1) that prosecution of separate actions by individual class members would create the risk of (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not party to those adjudications; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)

Here, Plaintiffs allege that they and other drivers/couriers worked hours for which they were not paid, and had unlawful deductions from their pay as a result of Defendants' "independent contractor" classification method.   There is no doubt that Plaintiffs' coworkers and the putative class members have the greatest knowledge of the amount of time they spent on the job, the expenses for which they were charged, the benefits Defendants provided to employees, and the effects of Defendants' classification practices.  Accordingly, allowing Plaintiffs to contact and interview other drivers/couriers will allow Plaintiffs to show that the effects of Defendants' practices were common among class members for purposes of Rule 23 class certification.  See Fed. R. Civ. P. 23(a), (b).  This information is discoverable.  See Oppenheimer Fund, Inc., 437 U.S. at

354, n.8 (noting that the identities of putative class members may be discoverable where communication with them could yield information bearing on issues relevant to Rule 23); Wiegele v. Fedex Ground Package Sys., 2007 WL 628041, at *2-3 (S.D. Cal. Feb. 8, 2007) (affirming magistrate judge's order compelling defendant to identify 250 to 500 former-employees prior to class certification); Yaffe v. Powers, 454 F.2d 1362, 1367 (1st Cir. 1972).

The same is true for Request for Production No. 15, relating to the identities of supervisors.  Just as the identification of potential class members is relevant to class certification, so too is the identification of the individuals who supervised them.  This is particularly true where Defendants have admitted that the putative class members' supervisors were responsible for managing certain daily operations of their respective regions.  Not only did these supervisors likely participate in the "independent contractor" classification practices, training, negotiations, and deductions, but they may also have other discoverable information relating to the appropriateness of this practice. Defendants should be ordered to identify these supervisors.

Interrogatories 8 and 10 and Requests for Production 12, 13, and 15 satisfy the low standard of relevance in discovery.  The identities of Defendants' independent contractors and supervisors, and Plaintiffs' coworkers are necessary for both parties to obtain information relevant for the preparation of this case and its determination on the merits. Accordingly, this information is discoverable.  As can be expected, Plaintiffs either do not know, or cannot recall the names, addresses, and phone numbers of Defendants' employees, independent contractors, and supervisors from years past.  Defendants can

easily access that information and provide it, and are likely already talking with these eyewitnesses themselves.   (See Rowland Dep. 66:1-9.)   The Court should therefore compel Defendants to answer these simple discovery requests.

**C.   There is No Reason to Restrict the Scope of Discovery to Exclude the Names of Fact Witnesses to Central Issues in Dispute.**

Defendants' objections on the grounds that Interrogatories 8 and 10 and Requests for Production 12, 13, and 15 are overbroad and call for confidential information that is not discoverable absent conditional certification of a "collective" class are unpersuasive. Additionally, none of the interrogatories or requests for production in this case meet the statutory standards for limiting discovery: (1) they are not unreasonably cumulative or duplicative, or obtainable from an alternative and more convenient source; (2) the Plaintiffs have not had ample opportunity to obtain the information sought; and (3) the burden or expense of disclosing the information does not outweigh the potential value of the information.  Fed. R. Civ. P. 26(b)(2)(C).  Defendants should therefore be compelled to disclose the identity and known contact information as requested.

**1.   The Identities and Contact Information Requested are Discoverable Regardless of Whether a Collective Action was Certified.**

Defendants mistakenly confused the concepts of relevance and class certification when they improperly refused to disclose the identity and contact information of independent contractors and employees on the grounds that a "collective" class has not been certified.  The United States Supreme Court has recognized the appropriateness of ordering defendants to produce the names and addresses of their employees, even where a class has not yet been certified.  See Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S. 165,

170 (1989). Not only may employees have information relevant to class status, but they also may serve as fact witnesses who have other relevant information regarding the merits of the case. See id. The Supreme Court specifically stated, "Without pausing to explore alternative bases for the discovery, *for instance that the employees might have knowledge of other discoverable matter*, we find it suffices to say that the discovery was relevant to the subject matter of the action and that there were no grounds to limit the discovery under the facts and circumstances of this case." Id. (emphasis added). In addition, many other courts have found that contact information for co-workers and other employees is discoverable in cases such as this. See Allen, et al v. Accredited Home Lenders, Civ. No. 3-06-0921 (M. D. Tenn. Apr. 23, 2007) (ordering defendant to provide names of co-workers, finding them relevant to the claims asserted); Bailey v. Ameriquest Mortgage Co., 2002 WL 100388, at *2 (D. Minn. Jan. 23, 2002) (compelling disclosure of identification and contact information for defendant's employees, and rejecting defendant's contention that such information is not discoverable absent previous certification of a class); MJS Janitorial v. Kimco Corp., 2004 WL 2905409, at *4 (W.D. Tenn. Apr. 19, 2004) (unpublished opinion) (ordering plaintiff to disclose identities and contact information for its employees and subcontractors, because the "only way for [the defendant to find out if employees and subcontractors have information regarding the claims and defenses] is to ask"); Morden v. T-Mobile USA, Inc., 2006 WL 1727987 (W.D. Wash. June 22, 2006) (granting plaintiffs' motion to compel list of employees without a motion for conditional certification pending in misclassification and "off-the-clock" case); Whitworth v. Chiles Offshore Corp., 1992 WL 365153 (E.D. La. Nov. 25,

1992) (affirming magistrate judge's decision granting plaintiff's motion to compel defendant to produce the names and addresses of similarly situated employees); <u>Wiegele</u>, 2007 WL 628041 (approving plaintiffs' motion to compel list of employees without certification); <u>Koo v. Rubio's Rest., Inc.</u>, 109 Cal. App. 4th 719, 736 (2003) ("'[A]s a general rule, before class certification has taken place, all parties are entitled to 'equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties'") (quoting <u>Atari, Inc. v. Superior Court</u>, 166 Cal. App. 3d 865, 869 (Cal. Ct. App. 1985)).

Just as anticipated by the Supreme Court in <u>Hoffman-La Roche</u>, the employees and independent contractors in this case have knowledge of discoverable information that is relevant and not privileged.  Because the independent contractors, supervisors, and Plaintiffs' employees likely have information relevant to both the merits of this case and the appropriateness of class certification, Defendants' objection is inadequate and misplaced.  Thus, Defendants should be compelled to disclose this information.

**2.    The Identities and Contact Information Requested are Discoverable Despite any Concerns Regarding Confidentiality.**

Defendants have also taken the position that the interrogatories and requests relating to the identities of independent contractors, supervisors, and coworkers seek information that is confidential.  This argument fails.  Any privacy interests that may be raised by Interrogatories 8 and 10 and Requests for Production 12, 13, and 15 are minimal when balanced against the importance of the information these individuals are likely to possess.  These individuals are employees and independent contractors of

Defendant; it is no secret that they worked for Defendant.  Since no sensitive information is being sought, or is even at issue in this litigation, objections based on confidentiality are inappropriate in this case.  See Allen, No. 3-06-0921 (M.D. Tenn. Apr. 23, 2007) (granting plaintiffs' motion to compel names, addresses, job titles, dates of employment, and phone numbers of Defendants' employees and independent contractors).  Further, Defendants have already disclosed the identities of some of the supervisors.  (Rowland Dep. 19:17-20:15.)  Defendants cannot credibly claim that the identities and contact information of one group of employees is somehow more or less confidential than that of another.  Moreover, any concerns regarding confidentiality should have been adequately addressed by issuance of the Court's Protective Order, dated April 4, 2007.  See Wiegele, 2007 WL 628041, at *2-3 (affirming magistrate judge's order compelling the identities of putative class members and approving the use of a protective order to protect the information from disclosure).  Accordingly, Defendants should be compelled to produce the names and contact information of these witnesses.

3.      **The Discovery Requests are Narrowly Tailored to Seek the Discovery of Relevant Evidence.**

Defendants' objections on grounds that the discovery requests at issue are overbroad is without merit.  Plaintiffs' requests are narrowly tailored to the facts in dispute.  Interrogatory No. 10 and Request for Production No. 13 do not seek the identification of all employees who have worked for Defendants; Plaintiffs seek only the names of other individuals employed in the same office as Plaintiffs during the applicable statutory period.  Additionally, Interrogatory No. 8 and Request for Production No. 12

pertain only to identification of independent contractors who worked for Defendants during the applicable statutory period: individuals who may be a part of the putative Rule 23 class.

Although a court may narrow the scope of a discovery request if it seeks more information than is relevant, the limitation by time to the applicable statutory period limits these requests to only relevant evidence.  See MJS Janitorial, 2004 WL 2905409, at *3 (narrowing time span of request for names of subcontractor-janitors used by party from the last fifteen years to six months preceding the signing of contract in dispute; finding the names of subcontractors used after contract in dispute was executed to be relevant and discoverable).  Defendants incorrectly object to a six year statutory period on grounds that the longest possible statute of limitations involved in this case is three years.  Plaintiffs filed claims based on Defendants' violations of ERISA: claims which are subject to a six year statute of limitations.  ERISA, 29 U.S.C.A. § 1113 (2007). Likewise, Request for Production 15 asks only for the identification of supervisors from the same time period.  Defendants have already indicated that there are only a handful of such individuals.  (See Rowland Dep. 19:17-20:15.)  Because (as described above) these individuals are essential fact witnesses, and likely have knowledge which will lead to the discovery of admissible evidence, Defendants should be compelled to respond to these narrowly tailored discovery requests.

**4.     The Discovery Sought Is Not Obtainable from Another Source, Plaintiffs Have Had No Other Opportunity To Obtain the Information, and the Likely Benefit of the Discovery Outweighs Its Burden and Expense.**

Finally, Plaintiffs' discovery requests meet the requirements of Federal Rule of Civil Procedure 26(b)(2)(C).  The information sought is not obtainable from any other source, Plaintiffs have not had any other opportunity to obtain the information, and the likely benefit of the discovery outweighs its burden and expense.  Fed. R. Civ. P. 26(b)(2)(C).  Defendants should therefore be compelled to produce the requested information.

Defendants alone possess the names and contact information of its current and/or former employees and independent contractors.   Plaintiffs cannot be expected to remember their names, phone numbers, and addresses, particularly when Plaintiffs were rarely, if ever, in contact with other employees due to the solitary duties of a driver/courier.  Thus, Plaintiffs may not have even met the majority of the individuals who likely have information pertinent to the claims involved here.

Because Defendants have categorically refused to disclose this information, Plaintiffs have had no other opportunity during discovery to obtain the information sought.  Plaintiffs requested the names and contact information of their coworkers, independent contractors, and supervisors in their first set of Interrogatories, and have repeatedly requested a response since then.  Although Plaintiffs' discovery requests sought relevant information and were timely propounded, and Defendants are the only source of the information sought, Defendants have repeatedly refused to produce the

requested names and contact information.  Plaintiffs have therefore been denied every

opportunity to obtain this essential information for the development of their case.

Moreover, the likely benefit of these discovery requests clearly outweighs any

minimal burden or expense.  As Defendants' Rule 30(b)(6) witness indicated, Defendants

already have a compiled list of the majority of this information for the purposes of

disclosure.  (Rowland Dep. 66:1-9.)  Any concerns regarding burden or expense are

nullified by this fact.  Additionally, the importance of this information in the

determination of the merits of the case and the issue of Rule 23 class certification is

paramount.  Defendants should therefore be compelled to disclose the requested

identifications and contact information.

## II.   DEFENDANTS SHOULD BE COMPELLED TO ANSWER AND RESPOND TO DISCOVERY REQUESTS PERTAINING TO PLAINTIFF KYREN PINKS.

Defendants have failed to respond in any manner to Plaintiffs' repeated discovery

requests for disclosure of information pertaining to named Plaintiff, Kyren Pinks.  In

Plaintiffs' first and second sets of Interrogatories and Requests for Production, the term

"Plaintiff" was defined to include "Raymond Parker and any other persons who join the

above-entitled litigation as plaintiffs by written consent or otherwise."  (Exs. 5 and 7.)

Even within their own "General Objections" to Plaintiffs' discovery requests, Defendants

acknowledged the appropriateness of disclosing information relating to named Plaintiffs.

(Exs. 2, 6, 8.)  This information is obviously relevant to Mr. Pinks' claims and

Defendants' possible defenses, and there is no reason for the scope of this type of

discovery to be limited.  Nevertheless, Defendants have repeatedly failed to respond to

discovery requests regarding Kyren Pinks.  This kind of "total failure to respond" rises to the level of egregiousness warranting the imposition of Rule 37(d) sanctions.  <u>See</u> <u>Laclede Gas Co. v. G.W. Warnecke Corp.</u>, 604 F.2d 561 (8th Cir. 1979) (holding that a total failure to respond to discovery requests warrants severe sanctions).

This litigation arises from a dispute regarding the nature, terms, and conditions of Mr. Pinks' relationship with Defendants.  Rule 26(b)(1) specifically states that Mr. Pinks is entitled to discovery of any non-privileged matter "that is *relevant to the claim or defense of any party*, including the existence, description, nature custody, condition, and location of any books, documents, or other tangible things."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Despite the fact that all of the information requested in Interrogatories 2, 4, 9, 13, 21, and 22, and Requests for Production of Documents 1 – 11, 14, 19, 21, 22, 40, and 43 are directly relevant to Mr. Pinks' claims and possible defenses to his claims, Defendants have simply refused to respond in any manner.  There is no reason for Defendants' total failure to respond.  In fact, Defendants disclosed similar information relating to Plaintiff Raymond Parker.

Further, there is no reason to limit the scope of discovery with respect to information pertaining to Plaintiff Pinks' relationship with Rowland Express.  Since Defendants have not disclosed any information pertaining to Mr. Pinks, these discovery requests are not unreasonably cumulative or duplicative, nor can the information be obtained from an alternative or more convenient source.  <u>See</u> Fed. R. Civ. P. 26(b)(2)(C). Additionally, the burden or expense of disclosing the requested information does not seem to be a factor for Defendants, particularly in light of their willingness to respond to

the same discovery requests with respect to Mr. Parker.  Because Interrogatories 2, 4, 9, 13, 21, and 22, and Requests for Production of Documents 1 – 11, 14, 19, 21, 22, 40, and 43 are relevant to developing the merits of Mr. Pinks' claims, and are clearly calculated to lead to the discovery of admissible evidence, Defendants should be compelled to respond.

## III.  DEFENDANTS SHOULD BE COMPELLED TO DISCLOSE INFORMATION PERTAINING TO SIMILAR JUDICIAL OR ADMINISTRATIVE PROCEEDINGS OR INVESTIGATIONS.

Defendants have also failed to respond to Plaintiffs' request for information pertaining to judicial or administrative proceedings, investigations, or inquiries regarding Defendants' employment practices, including wage, hour, and compensation policies for its drivers.  Because Interrogatory No. 20 seeks information that is relevant to developing the merits of Plaintiffs' claims, and is reasonably calculated to lead to the discovery of admissible evidence, Defendants should be compelled to answer in full.

Interrogatory No. 20 seeks information that is directly relevant to the issue of whether Defendants' violations of the FLSA and state laws were willful.  See F.L.S.A. 29 U.S.C. § 255(a).  A violation of the FLSA is "willful" if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin, 486 U.S. at 133.  If Defendants' wage, hour, compensation, and employment practices were previously investigated, or Defendants had prior complaints regarding its practices, it is likely that they were on notice of potential or actual violations of the FLSA.  Thus, this information is directly relevant to developing the merits of Plaintiffs' claim that Defendants' violations were willful.

Additionally, Defendants' objections on grounds of overbreadth and confidentiality are insufficient to overcome the discoverability of this evidence. Interrogatory No. 20 is limited to a five-year time span, in which Defendants could have been placed on notice of their unlawful employment practices. Because the willfulness of Defendants' unlawful practices depends upon their *prior* awareness of the requirements of the law, this Interrogatory seeks information regarding Defendants' knowledge just prior to the statute of limitations cut-off for Plaintiffs' FLSA claims. 29 U.S.C. § 225(a). Further, it is well within the statute of limitations period for Plaintiffs' ERISA claims. 29 U.S.C. § 1113. Thus, the scope of this Interrogatory is reasonably calculated to lead to the discovery of relevant, admissible evidence. Additionally, the Court's April 4, 2007 Protective Order should suffice to address any of Defendants' concerns regarding confidentiality. (Dkt. #14.)

Moreover, there is no reason to limit the scope of discovery relating to past investigations into Defendants' practices. Plaintiffs are not able to obtain the information requested from any other source, nor have Defendants disclosed this information through other forms of discovery. Thus, Defendants should be compelled to respond to Interrogatory No. 20 in full.

## IV. DEFENDANTS SHOULD BE COMPELLED TO FULLY DISCLOSE DEFENDANT'S LOCAL CONTRACTOR AGREEMENTS WITH DHL AND SIMILAR DOCUMENTS.

Finally, Defendants have refused to fully disclose contractual agreements with DHL and similar documents. Although Defendants did disclose the Cartage Agreement with DHL, the information regarding rates was redacted, and Defendants refused to disclose

31

any similar agreements, if they exist.  (Ex.18.)  Because Request for Production of Documents No. 38 seeks relevant information pertaining to the willfulness of Defendants' actions, Defendants should be compelled to respond in full.  <u>See</u> F.L.S.A. 29 U.S.C. § 255(a).

As explained above, the willfulness of Defendants' actions is at issue in this litigation.  <u>See</u> F.L.S.A. 29 U.S.C. § 255(a).  Since "willfulness" refers to Defendants' state of mind with respect to its employment, contracting, and compensation practices, Defendants' knowledge and motive for implementing the "independent contractor" classification system are directly relevant.  The profitability of enacting such policies and procedures may lead to the discovery of admissible evidence regarding Defendants' motives.  Rate information is critical to this inquiry.  Thus, Plaintiffs' request for full disclosure of Defendants' local contractor agreements seeks information directly relevant the willfulness of Defendants' actions in implementing the "independent contractor" classification system.

Further, there is no reason to limit the scope of discovery pertaining to Defendants' local contractor agreements.   Despite the Court's issuance of a Protective Order, Defendants claimed that the rate information contained in the Cartage Agreement is confidential and proprietary, and refused to disclose this relevant information.  (Ex. 8.) Contrary to Defendants' assertion, the Court's Protective Order of April 4, 2007 provides sufficient protection, if this information is actually confidential:

> Documents produced by a party may be designated as Confidential Information by marking the initial page of each document: "CONFIDENTIAL"

> In lieu of marking the original of a document, the party may mark the copies that are produced or exchanged.

(Dkt. #14 ¶ 6, at 4.)   Thus, confidentiality is insufficient grounds for nondisclosure. Moreover, Defendants' rate information is not duplicative in any way; Plaintiffs have not obtained this information from any other source.   Additionally, Defendants are the least burdensome, least expensive source from which to obtain this information.   Thus, Request for Production of Documents No. 38 is reasonably calculated to lead to the discovery of admissible evidence, and there is no reason to limit the scope of discovery with reference to the local contractor agreements.   Defendants should therefore be compelled to respond in full.

## CONCLUSION

In light of Plaintiffs' repeated attempts to obtain this requested relevant, discoverable information without the involvement of the Court, and Defendants' steadfast refusal to cooperate, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Compel in full.

Dated: October 15, 2007                NICHOLS KASTER & ANDERSON, PLLP


                                       s/ Steven Andrew Smith
                                       Steven Andrew Smith (#260836)
                                       4600 IDS Center
                                       80 South 8th Street
                                       Minneapolis, MN  55402
                                       Telephone (612) 256-3200
                                       Fax (612) 338-4878

                                       ATTORNEY FOR PLAINTIFFS